UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GARY H. LEBBIN<br>16894 River Birch Circle,<br>Delray Beach, Florida 33445<br><br>AND<br><br>THE LEBBIN-SPECTOR FAMILY TRUST<br>BY AND THROUGH ITS TRUSTEES<br>ROGER M. LEBBIN AND CAROLE SUE<br>LEBBIN<br>11611 Old Georgetown Road,<br>Rockville, Maryland 20852,<br>*(Montgomery County Resident)*<br>              PLAINTIFFS,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE<br>COMPANY<br>4333 Edgewood Road NE,<br>Cedar Rapids, Iowa 52499,<br>              DEFENDANT.<br>   Serve On:<br>      Insurance Commissioner<br>      Maryland Insurance Administration<br>      200 St. Paul Place, Suite 2700<br>      Baltimore, MD 21202 | CASE NO.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Gary H. Lebbin and The Lebbin-Spector Family Trust (the "Trust"), by and through its Trustees Roger M. Lebbin and Carole Sue Lebbin (the "Trustees") (collectively, the "Plaintiffs"), hereby file this Civil Action Complaint against Transamerica Life Insurance Company ("Transamerica" or the "Defendant"), and in support thereof, aver as follows:

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GARY H. LEBBIN<br>16894 River Birch Circle,<br>Delray Beach, Florida 33445<br><br>AND<br><br>THE LEBBIN-SPECTOR FAMILY TRUST<br>BY AND THROUGH ITS TRUSTEES<br>ROGER M. LEBBIN AND CAROLE SUE<br>LEBBIN<br>11611 Old Georgetown Road,<br>Rockville, Maryland 20852,<br>*(Montgomery County Resident)*<br>         PLAINTIFFS,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE<br>COMPANY<br>4333 Edgewood Road NE,<br>Cedar Rapids, Iowa 52499,<br>         DEFENDANT.<br>  Serve On:<br>    Insurance Commissioner<br>    Maryland Insurance Administration<br>    200 St. Paul Place, Suite 2700<br>    Baltimore, MD 21202 | CASE NO.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Gary H. Lebbin and The Lebbin-Spector Family Trust (the "Trust"), by and through its Trustees Roger M. Lebbin and Carole Sue Lebbin (the "Trustees") (collectively, the "Plaintiffs"), hereby file this Civil Action Complaint against Transamerica Life Insurance Company ("Transamerica" or the "Defendant"), and in support thereof, aver as follows:

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

## INTRODUCTION

1. Beginning with the turn of the 20th century, average life expectancy in the United States has increased dramatically, with the number of Americans living to age 100 steadily rising. Americans age 100 or older, known as "centenarians," are considered by some experts to be the fastest growing segment of our population. Living links to our history, centenarians are cherished and routinely honored by local communities and governments for their longevity. Centenarians, however, are problematic for the life insurance industry.

2. For decades, life insurance carriers, such as Transamerica, sold permanent universal life insurance policies, marketed as "insurance for life," utilizing outdated mortality tables that did not take into account the fact that Americans were, and are, increasingly living to and past the age of 100. The result has been the improper termination of life insurance policies that were originally sold to policy holders as "permanent insurance." The life insurance industry has left its customers (who faithfully paid their premiums with the expectation that they would have coverage for the remainder of their lives) uninsured. Further twisting the knife, these terminations have exposed customers to adverse tax consequences that are in direct contradiction to the guarantees made when these policies were purchased.

3. Mr. Gary H. Lebbin's life has long been insured through two permanent universal life insurance policies issued by Transamerica in the early 1990s (the "Policies"). As he approaches the remarkable 100 year-old milestone in September 2017, he and his family are unable to celebrate. The insurance company in which Mr. Lebbin and his deceased wife placed their trust, Transamerica, has stated that it intends to terminate his permanent universal life coverage, leaving him uninsured and subject to unexpected tax consequences.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

4. For nearly three decades, Transamerica has collected over a million and a half dollars (over $1,500,000) in premiums from the Plaintiff Trust (on policies with a combined death benefit of $3,200,000), all the while representing and promising to Plaintiffs that the Trust owned permanent life universal life insurance that would provide income tax-free proceeds to Mr. Lebbin's estate without the estate's incurring additional income tax at his passing. Unfortunately, in breach of its representations, promises and commitments, Transamerica has now decided to terminate Mr. Lebbin's life insurance coverage, solely because he is obtaining the age of 100. Furthermore, adding insult to injury, Transamerica will then issue Mr. Lebbin a taxable distribution. Having enriched itself in the form of over $1,500,000 in premiums, Transamerica's termination of the Policies is inequitable, unconscionable and in direct breach of its contractual obligations and representations to Plaintiffs.

## PARTIES

5. Plaintiff Gary H. Lebbin is an adult individual and a citizen of the State of Florida, residing at 16894 River Birch Circle, Delray Beach, Florida 33445.

6. The Trust is a family trust that is a citizen of the State of Maryland, being formed and administered in Montgomery County, Maryland, with a principal address of 11611 Old Georgetown Road, Rockville, Maryland 20852. By its terms, the Trust is to be interpreted pursuant to Maryland law.

7. Roger M. Lebbin is an adult individual, trustee of the Trust and a citizen of the State of Maryland residing at 5630 Wisconsin Ave., Apt. 602, Chevy Chase, Maryland 20815.

8. Carole Sue Lebbin is an adult individual, trustee of the Trust and a citizen of the State of Florida, residing at 16381 Maddalena Place, Delray Beach, Florida 33446.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

9. Defendant Transamerica Life Insurance Company, which is also the successor in interest to Transamerica Occidental Life Insurance Company, is a corporation duly organized and existing under the laws of the State of Iowa, with its principal place of business located at 4333 Edgewood Road NE, Cedar Rapids, Iowa 52499. Transamerica is a citizen of the State of Iowa, registered to conduct business in the State of Maryland. Transamerica's corporate predecessor issued the Policies, and Transamerica administered the Policies during the relevant timeframe herein.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity among Plaintiffs and Defendant.

11. This is an actual controversy between and among Plaintiffs and the Defendant, as set forth more fully herein, concerning their respective rights and obligations, if any, in connection with the Policies. The action is properly brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to the claim occurred herein.

## FACTUAL BACKGROUND

### The Lebbin Family

13. Gary H. Lebbin, was born on September 6, 1917, in Berlin, Germany, and came to the United States in 1938 to escape Nazi persecution.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

14. Mr. Lebbin, having arrived penniless in this country, founded a paint manufacturing and retail business in the Maryland-Virginia-DC area. The business was later sold.

15. Mr. Lebbin and Bernice H. Lebbin were married in 1944. They were married over 70 years.

16. Mr. and Mrs. Lebbin had two children, Roger M. Lebbin and Carole Sue Lebbin, four grandchildren, and seven great-grandchildren.

17. Mrs. Lebbin passed away on January 6, 2015.

18. Loving parents, grandparents and great-grandparents, the Lebbins' primary focus in their lives was always to care and provide for their family.

19. To this end, in the early 1990s, they became concerned with developing an appropriate tax and estate planning strategy that would allow them to provide for the health and well-being of their children, as well as the education of their grandchildren.

### Marketing and Policy Issuance

20. At this time, continuing to the present day, Transamerica markets its universal life policies as "a type of permanent life insurance that provides <u>coverage for life</u>. It is made up of two parts: a death benefit, which is the guaranteed amount of money left to your loved ones, and a cash value component. The cash value earnings grow tax-deferred, meaning no tax will be due until they are withdrawn" (emphasis added). The decision as to when the cash value is withdrawn is represented by Transamerica to be within the control of the policy owner. A true and correct copy of a description of Transamerica's universal life policies, obtained from Transamerica, is attached hereto as Exhibit "A."

21. In or about 1990, the Lebbins were approached by Transamerica, through its agent Jack Kaye, and were presented with a tax and estate planning strategy that involved the

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

- 5 -

purchase of two Transamerica permanent universal life insurance policies that would insure them for life, so long as they paid the necessary premiums to keep the policies in force.

22. The Policies were marketed, sold and represented to Plaintiffs by Transamerica and its agent as permanent coverage that would insure the Lebbins for life and guarantee their joint estate income tax-free liquid assets with which to pay estate taxes, thereby enabling Mr. and Mrs. Lebbin to leave additional funds in their estate to provide for the education of their grandchildren and for the health and well-being of their children.

23. The Policies were also marketed, sold and represented to Plaintiffs as a vehicle to allow the cash value earnings to grow tax-deferred, with no tax due on them until they were withdrawn, and that withdrawals (and thus the ability to determine when and if the cash value earnings would constitute taxable income) would be within the control of the Plaintiffs.

24. In furtherance of this strategy, on or about June 25, 1990, the Lebbins formed the The Lebbin-Spector Family Trust in Montgomery County, Maryland, naming their children, Roger M. Lebbin and Carole Sue Lebbin, as Trustees.

25. Relying on the representations of Transamerica and its agent, the Plaintiffs applied for and obtained from Transamerica two second-to-die permanent universal life insurance policies bearing policy numbers 92324057 and 92387187. True and correct copies of the Policies are attached hereto as Exhibits "B" and "C," respectively.

26. The face amounts of the Policies (the amounts payable as death benefits) are $2 million for policy number 92324057 and $1.2 million for policy number 92387187. The Policies were delivered to the policy owner, the Trust, at its then-principal address in or about 1990 and 1991, respectively.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770


27. The Policies were issued as "second to die" policies, meaning that they would pay out their death benefits only upon the passing of the last to die of Mr. and Mrs. Lebbin.

28. The Lebbins had been interested in purchasing individual policies that would pay a death benefit upon the death of either insured. But Transamerica's agent represented and directed the Lebbins to purchase second-to-die policies because he said that this type of policy would be more suitable for the Lebbins' needs, suggesting that they would be less expensive and "a better deal."

29. However, these representations turned out to be false and misleading.

30. Had the Lebbins purchased the insurance coverage that they originally intended to purchase, then they would have received the death benefit on at least one of the policies when Mrs. Lebbin passed away at age 97.

31. Instead, the period of time between Mrs. Lebbin's passing and the termination of the Policies has allowed Transamerica to continue to unjustly and inequitably enrich itself. It has collected an additional $600,000 in premiums during this period, and it has gained the opportunity, which it intends to seize, to terminate the Policies without making distribution of any death benefit.

32. The representations concerning the suitability and permanent nature of the Policies, as well as the associated tax benefits, were material to the Plaintiffs' purchase of the policies.

33. Throughout the terms of the policies, the Plaintiffs have honored their contractual obligations, paying all premiums necessary to keep the Policies in force.

34. The Plaintiffs have paid over $1.5 million in premiums during the life of the Policies.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

35. However, despite honoring their part of the bargain while relying on Transamerica's contractual obligations and representations, the Plaintiffs have recently discovered that Transamerica has not honored and is not willing to honor its part of the bargain.

### The Age 100 Problem

36. At the time the Policies were issued, the Policies were based upon the 1980 Commissioners Standard Ordinary Mortality Table ("CSO Table").

37. CSO Tables are actuarial tables used by insurance companies to value and price life insurance policies.

38. CSO Tables display the probability of death by age.

39. Each CSO Table contains a maximum or terminal age, *i.e.*, the age at which the table shows no survivors among those insured. In other words, the death rate in the year prior to the terminal age is 1 (or 100 percent).

40. The 1980 CSO Table terminal age was age 100.

41. The terminal age of 100 exists in the 1980 CSO Table primarily because the Transamerica (and the life insurance industry) incorrectly believed that no one would live to age 100.

42. Transamerica <u>continued</u> to use this CSO Table despite the fact that it was outdated and not an accurate reflection of the actual life expectancies of its customers.

43. For example, in 1990, when the policies at issue in this lawsuit were marketed and sold, US Census records indicate that there were over 37,000 centenarians alive in the United States.

44. Transamerica willfully and intentionally ignored this information and continued to use mortality tables that represented that there were no Americans that would live to age 100.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

45. Moreover, Transamerica continued to represent to its insureds that they were buying permanent life insurance that would insure them for life.

46. Despite Transamerica's knowledge that it was using outdated and inaccurate CSO Tables, and ignoring the fact that it represented and contractually committed to providing permanent life insurance for the lives of the insured, Transamerica began to terminate its permanent universal life policies when an insured reached the age of 100.

47. After faithfully paying premiums for permanent universal life insurance coverage, Transamerica's insureds began to be penalized for living such long lives.

48. Moreover, adding insult to injury, insureds were subject to significant adverse tax consequences when they reached the terminal age of maturity, consequences that were in direct contradiction to those promised by Transamerica.

49. For example, when an insured reached the age of 100, instead of receiving an income tax-free distribution in the form of the death benefit, insureds, through no fault of their own, would receive a taxable distribution of cash value from Transamerica at maturity.

50. Upon information and belief, Transamerica finally updated the CSO Table used in its universal life policies in the mid to late 2000s, incorporating the 2001 CSO Table into its policies.

51. The 2001 CSO Table raised the terminal age to 121.

52. Consequently, death benefit coverage or "policy maturity" in universal life policies issued by Transamerica since the mid to late 2000s (or earlier) extends the terminal age to 121, effectively guaranteeing that the policy will remain in force until the death of the insured, and thereby permitting Transamerica to honor its contractual obligations and representations to its insureds.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

- 9 -

53. However, Transamerica has ignored older permanent universal life policies that it issued under the old CSO Tables, choosing instead to terminate these policies at age 100 despite having previously guaranteed them for life.

54. Upon information and belief, some life insurance carriers (not including Transamerica) began to offer the option of an Extended Maturity Rider ("EMR") to their older universal life customers that would allow policies that were set to mature at age 100 to mature at 121.

55. EMRs would extend the coverage for life as promised and prevent the adverse tax consequences caused by early termination.

### **Transamerica Refuses to Honor Its Commitments**

56. In or about 2016, Plaintiffs first became aware that Transamerica, despite representing that the Policies provided permanent insurance for the life of Mr. Lebbin, intended to terminate the Policies, with the first policy terminating in July 2017.

57. Hoping that Transamerica would honor its commitments after having accepted over a million and a half dollars in premiums, Plaintiffs wrote to Transamerica, seeking confirmation that Transamerica would continue to provide Mr. Lebbin coverage for the remainder of his life as promised.

58. On or about August 9, 2016, Transamerica wrote to the Plaintiffs, informing them that it would not honor its obligations and would instead terminate the Policies and issue Plaintiffs a taxable distribution.

59. Over the course of the next several months, Plaintiffs continued to correspond with Transamerica, requesting that they not terminate the Policies, even asking for an EMR to age 121 similar to those issued by other carriers in the industry.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

60.  Transamerica has refused these requests and maintains that it will terminate the Policies and issue Plaintiffs a taxable distribution despite its promises, representations and obligations to the contrary.

## COUNT I
## BREACH OF CONTRACT

61.  Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

62.  The Policies are valid, enforceable contracts between Plaintiffs and Transamerica.

63.  All amounts billed by Transamerica for the Policies have been paid, and Plaintiffs have performed all of their obligations under the Policies. All conditions precedent have been performed, waived, or excused.

64.  The Policies were to provide permanent coverage for the lives of the Lebbins.

65.  The Policies were represented to be suitable for Plaintiffs' needs.

66.  The Policies were to further provide taxable advantages to the Plaintiffs.

67.  By stating that it intended to terminate the Policies prior to the death of Mr. Lebbin and to issue taxable distributions to the Plaintiffs, Transamerica has breached its contractual duties and obligations owed to the Plaintiffs under the Policies.

68.  Transamerica's breaches of the Policies have proximately caused damages in an amount to be determined at the time of trial.

69.  With respect to the Policies, Plaintiffs seek an injunction precluding Transamerica from terminating the Policies and causing a lapse in coverage and adverse taxable events to Plaintiffs under the Policies and applicable law.

70.  Furthermore, implied in the Policies are covenants of good faith and fair dealing by Transamerica.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

71. Transamerica owed Plaintiffs a duty to act in a manner that does not frustrate and disappoint the reasonable expectations of Plaintiffs under the Policies.

72. Assuming, *arguendo*, that Transamerica did not violate an explicit contractual provision of the Policies, Transamerica has breached the covenant of good faith and fair dealing because it has informed Plaintiffs that it will terminate the Policies, wrongfully and inequitably depriving Plaintiffs of the benefit of the fully paid Policies.

73. Moreover, if permitted to terminate the Policies, Transamerica's termination and related actions will frustrate and deprive Plaintiffs of the reasonably expected benefits of the Policies.

74. Transamerica's breaches of the covenant of good faith and fair dealing have proximately caused damages in an amount to be determined at the time of trial.

75. With respect to the Policies, Plaintiffs seek an injunction precluding Transamerica from terminating the Policies, which termination would constitute a breach of the covenant of good faith and fair dealing.

## COUNT II
## NEGLIGENT MISREPRESENTATION

76. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

77. Transamerica, through its employees and other agents, represented to Plaintiffs that the Policies constituted permanent life insurance that would provide the Lebbins coverage for life.

78. Transamerica also made multiple representations concerning the suitability of the Policies to meet the Lebbins' estate and tax planning needs.

LAW OFFICES
McCarthy Wilson
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

79. Transamerica also made multiple representations, as discussed in the preceding paragraphs, concerning the tax treatment and consequences of the Policies.

80. These statements were false when made, as Transamerica should have known.

81. Transamerica knew and expected Plaintiffs to rely on these representations and they did so rely in that they purchased the Policies and fulfilled their obligations pursuant to same.

82. As a result of these careless misrepresentations by Defendant, Plaintiffs have been damaged.

## COUNT III
## FRAUD: INTENTIONAL MISREPRESENTATION

83. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

84. Transamerica made false representations of material facts to Plaintiffs before, during and after the issuance of the Policies including, but not limited to, whether the Policies would insure the Lebbins for life, as well as whether they constituted permanent insurance.

85. Transamerica also made material misrepresentations to Plaintiffs before, during and after the issuance of the Policies concerning the suitability of the Policies to meet Plaintiffs' desired estate and tax planning objectives.

86. Transamerica also made material misrepresentations to Plaintiffs before, during and after the issuance of the Policies concerning the tax treatment and consequences of the Policies.

87. Transamerica knew that its representations were false or that it was being reckless with respect to its knowledge of the truth.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

88. Transamerica intended for Plaintiffs to act in reliance upon its false representations, which resulted in the issuance of the Policies and Plaintiffs spending – Defendant collecting – over a million and a half dollars in premiums.

89. Plaintiffs justifiably and reasonably relied on Transamerica's knowingly false representations to their detriment.

90. As the direct and proximate result of Transamerica's intentional misrepresentations, Plaintiffs have suffered and continues to suffer substantial actual damages.

## COUNT IV
## VIOLATIONS OF MARYLAND'S CONSUMER PROTECTION ACT

91. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

92. The Policies are governed by the Maryland Consumer Protection Act, Maryland Code Ann., Comm. Law § 13-101 et seq. (hereinafter the "Maryland Consumer Protection Act").

93. Plaintiffs are consumers as defined by the Maryland Consumer Protection Act.

94. Transamerica is a merchant as defined the Maryland Consumer Protection Act.

95. Maryland's Consumer Protection Act prohibits unfair and deceptive trade practices, which include failing to state material facts; making false, falsely disparaging. or misleading oral or written statements that have the capacity, tendency, or effect of misleading consumers; and knowingly concealing or omitting material facts with the intent that consumers rely on the same.

96. During the issuance and term of the Policies, Transamerica made the following misstatements and/or omissions of material fact: (1) misrepresented that the Policies were permanent life insurance that would insure the Lebbins for life; (2) misrepresented that the Policies were suitable products that would meet the Lebbins' stated estate and tax planning

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

needs: and (3) misrepresented and intentionally concealed the tax implications and consequences of the Policies.

97. These misrepresentations were made with the expectation that Plaintiffs would rely on them, and in fact, Plaintiffs did rely on these omitted material facts to their detriment. As a proximate result of these acts, Plaintiffs have been damaged.

## COUNT V
## UNJUST ENRICHMENT

98. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

99. As described above, Plaintiffs conferred a benefit upon Transamerica in the form of a million and a half dollars in premiums in connection with the Policies.

100. Transamerica had knowledge of, accepted, used, appreciated and enjoyed the benefits conferred upon it by Plaintiffs.

101. As described above, Transamerica has been unjustly enriched by Plaintiffs.

102. The enrichment of Transamerica at Plaintiffs' expense is unjust.

103. By reason of the actions alleged in the Complaint, Transamerica is liable to Plaintiffs for monetary damages arising from Transamerica's unjust enrichment at Plaintiffs' expense.

## COUNT VI
## DECLARATORY RELIEF

104. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

105. An actual controversy has arisen and now exists between Plaintiffs and Transamerica concerning the respective rights and duties of the parties under the Policies and applicable law.

106. Transamerica contends that it may terminate the Policies.

107. Plaintiffs contend that such termination would not be proper under the Policies and the applicable law.

108. Plaintiffs request a declaration as to their on-going rights under the Policies and request that the Court declare: (a) that Transamerica cannot terminate the Policies and must provide coverage for the life of Mr. Lebbin; and (b) that Transamerica cannot unilaterally issue adverse taxable distributions of cash value to Plaintiffs.

109. There exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

110. A judicial declaration pursuant to applicable law is necessary and appropriate at this time so that Plaintiffs' rights under the Policies may be determined with certainty.

## COUNT VII
### REFORMATION

111. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

112. Reformation of a contract is appropriate where there is a mutual mistake of fact, or a mistake is made by one of the parties accompanied by fraud, duress or other inequitable conduct practiced on the person making the mistake by another party.

113. Transamerica through fraud, duress and other inequitable conduct induced Plaintiffs to take out the Policies, umder the mistaken belief that Plaintiffs would be receiving permanent life insurance insuring the Lebbins for the remainder of their lives, that the Policies

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD,
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

were suitable for Plaintiffs' needs, and that there would be no adverse tax consequences to Plaintiffs. Maryland law requires that the Policies to be reformed to Plaintiffs' original and agreed-upon understanding of the coverage to be provided.

114. Alternatively, Plaintiffs' belief that the Policies would provide permanent life insurance insuring the Lebbins for the remainder of their lives, that the Policies were suitable for Plaintiffs' needs, and that there would be no adverse tax consequences to Plaintiffs, and Transamerica's representations to these effects, together amount to a mutual mistake that requires the Policies be reformed to conform to the original and agreed-upon intentions of the parties.

115. As a result of either the mutual mistake of both parties, or the unilateral mistake of Plaintiffs caused by the fraud, duress and inequitable conduct of Transamerica, Plaintiffs are entitled to a reformation of the Policies to provide permanent life insurance coverage for the remainder of Mr. Lebbin's life.

### COUNT IX
### RESCISSION

116. Plaintiffs hereby incorporate by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

117. As a result of the fraud alleged in Count III, the violations of the Maryland Consumer Protection Act alleged in Count IV, and Counts VI, Plaintiffs are entitled to a rescission of the Policies and return of the amounts paid by them as premiums over the term of the Policies, as well as additional damages requested below.

LAW OFFICES
MCCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, Gary H. Lebbin and The Lebbin-Spector Family Trust, by and through its Trustees, Roger M. Lebbin and Carole Sue Lebbin, respectfully request a trial by jury of all issues so triable and a judgment in its favor by this Court as follows:

    A.    A declaratory judgment of the parties' rights and obligations, as set forth above;

    B.    Actual, compensatory, consequential, and monetary damages in an amount to be determined at trial;

    C.    Exemplary, punitive, statutory, and multiple damages in an amount to be determined at trial;

    D.    An injunction precluding Defendant from terminating the Policies;

    E.    Reformation of the Policies to conform to the original and agreed-upon intentions of the parties;

    F.    Rescission of the Policies, including, but not limited to, a return of all premiums paid by Plaintiffs in connection with the Policies;

    G.    Reasonable attorneys' and other professional fees, expenses and costs (including, but not limited to, witness fees), and other recoverable expenses or costs, incurred by Plaintiffs as a result of these proceedings;

    H.    Pre-judgment and post-judgment interest at the highest rate(s) allowed by law;

    I.    Costs of Court; and

    J.    Such additional relief, at law and in equity, to which Plaintiffs may be justly entitled and which this Court deems just and proper.

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

July 6, 2017            **McCARTHY WILSON, LLP**

By:    /s/ David L. Rubino
David L. Rubino, Esquire
United States District Court Maryland Bar # 12358
McCarthy Wilson, LLP
2200 Research Boulevard, Suite 500
Rockville, MD 20850
(301) 762-7770
rubinod@mcwilson.com
*Local Counsel for Plaintiffs Gary H. Lebbin and The Lebbin-Spector Family Trust, by and through its Trustees Roger M. Lebbin and Carole Sue Lebbin*

**THE BAINBRIDGE LAW FIRM, LLC**

By:    /s/ James S. Bainbridge
James S. Bainbridge, Esquire
PA Attorney ID # 82607
1250 Germantown Pike, Suite 203
Plymouth Meeting, PA 19462
(484) 690-4542
jsb@thebainbridgelawfirm.com
*Attorneys for Plaintiffs Gary H. Lebbin and The Lebbin-Spector Family Trust, by and through its Trustees Roger M. Lebbin and Carole Sue Lebbin*

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

By:    /s/ David L. Rubino
David L. Rubino, Esquire

By:    /s/ James S. Bainbridge
James S. Bainbridge, Esquire

LAW OFFICES
McCARTHY WILSON
A LIMITED LIABILITY PARTNERSHIP
2200 RESEARCH BLVD.
SUITE 500
ROCKVILLE, MD 20850
(301) 762-7770

- 19 -